**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0261n.06
Filed: April 6, 2005

No. 04-1312

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    v.

On Appeal from the
United States District Court for
the Western District of Michigan

CHRISTOPHER BENSON,
    *Defendant-Appellant*.

_____/

Before: KENNEDY, MOORE, and SUTTON, Circuit Judges.

**Kennedy, J.** Defendant was tried by a jury and convicted of being a felon in possession of a firearm, possession with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking crime. Defendant alleges three errors on appeal. First he claims a Fifth Amendment violation with respect to the prosecution's reference to his post-Miranda warning silence during his trial. Second, Defendant claims that his right to Due Process was violated when his lawyer and the prosecution did not make the maximum upper limit of his possible sentence clear to him should he proceed to trial, instead of accepting a plea bargain. Finally, Defendant seeks re-sentencing in light of *U.S. v. Booker*, 125 S. Ct. 738 (2005). We find no reversible Fifth Amendment error, we find that his due process claims cannot be decided on the record before us, but we remand for re-sentencing in light of *Booker*.

Detroit police officers arrested Defendant Christopher Benson on January 23, 2003 when, pursuant to a search warrant, they searched a house where drugs had been sold. During the raid, the

police encountered Defendant sitting on a couch in the living room of the house. While arresting him, the police discovered that Defendant was either sitting on or next to a shotgun wrapped in sweat pants. The two other persons present ran to the rear of the house, one fleeing out the door. In a search of Defendant's person, police also discovered seventeen small bags of cocaine.

Defendant engaged in plea negotiations. During those negotiations, he may have been misinformed as to the maximum length of his sentence should he proceed to trial and be found guilty. Defendant decided to maintain his plea of not guilty.

During his trial, the prosecution and the defense both questioned witnesses regarding police interrogation of Defendant and whether Defendant received Miranda warnings. After the prosecution again raised the Miranda issue in examination of a witness, the district court cautioned the jury not to draw any inference about Defendant's post-Miranda warning silence. *Id*. at 207-08. During Defendant's closing arguments, Defendant argued that sitting still while the police entered and chased the other individuals was evidence of his innocence. *Id.* at 238, 240-41. In rebuttal, the prosecution responded to Defendant's assertion, arguing that sitting still and remaining silent was not necessarily evidence of innocence, but could be evidence of another frame of mind entirely. *Id*. at 250-51. During final instructions, the district court again cautioned the jury against drawing any inferences because of Defendant's silence. *Id*. at 233-34. It further instructed the jury that the lawyers' arguments were not evidence.

A jury found Defendant guilty of all charges. The court sentenced Defendant under the then mandatory Guidelines to 120 months' imprisonment on the first count, a concurrent term of 240 months' imprisonment on the second count, and a consecutive 120 months' imprisonment on the third count.

Defendant argues that the prosecution committed a Fifth Amendment violation. The prosecution many not use a Defendant's post arrest silence as substantive evidence in its case-in-chief. *Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966). Post arrest silence carries little probative value and any reference to it can seriously prejudice a Defendant's rights. *U.S. v. Hale*, 422 U.S. 171, 180-81 (1975).

Although, in this case, the prosecution did elicit testimony that Defendant remained silent after his Miranda warning, this was without objection and was followed by defense counsel's more extensive inquiries. Additionally, the district court twice instructed the jury that Defendant's post-Miranda warning silence was not evidence of his guilt -- once immediately after government inquiry and again in the final jury instruction. We presume that the jury follows a court's curative instructions absent an overwhelming probability that it would be unable to do so. *U.S. v Moreno*, 933 F.2d 362, 368 (6th Cir. 1991) (citing and quoting *United States v. Gomez-Pabon,* 911 F.2d 847, 858 (1st Cir. 1990)). To reverse a conviction, we also generally require a strong likelihood that the violation must be extremely prejudicial to Defendant. *See id.* We do not believe that the testimony elicited damaged Defendant in such a way, nor do we feel that a reasonable jury would be unable to follow the court's curative instructions in this case.

The prosecution's argument in rebuttal to Defendant's closing argument that sitting still rather than running as the two other occupants did was evidence of his innocence, do not amount to a Fifth Amendment violation. We traditionally give wide latitude to prosecutors when they respond to Defendants' closing arguments. *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (en banc). Although a jury could draw an inference that the prosecution, in rebuttal, was implying that Defendant's silence was evidence of his guilt, we believe that the district court's instructions

3

cured any injurious effect, particularly given that the prosecution was clearly responding to a defense argument rather than making an affirmative argument that Defendant's silence was tantamount to his guilt.

Defendant argues that he was misinformed as to the maximum sentence and that the sentence that the district court imposed on him was substantially higher than he expected it to be. While Defendant characterizes this error as a violation of his Due Process Rights, his claim is really one of ineffective assistance of counsel. Most of his arguments relate to the failure of his counsel or the prosecution to inform him about the possible length of the sentence he could receive if a jury found him guilty.[1]

This court typically refrains from addressing these types of claims on direct appeal. *U.S. v. Walton*, 908 F.2d 1289, 1295 (6th Cir. 1990) (citing *United States v. Swidan*, 888 F.2d 1076, 1081 (6th Cir. 1989)). The rationale for this rule stems from the absence of evidence on prejudice in the record in most cases. That concern is present here. Appellate courts also do not typically resolve factual issues. *United States v. Jackson*, 191 F.3d 740, 747 (6th Cir. 1999) ("One reason for this rule is that claims of ineffective assistance of counsel require a factual finding of prejudice, and appellate courts are not well equipped to undertake the resolution of factual issues."). Defendant should, therefore, raise this argument in a collateral attack on his conviction.

Defendant also challenges his sentence. In light of the Supreme Court's ruling in *Booker*, the Sentencing Guidelines are no longer mandatory. *U.S. v. Booker*, 125 S. Ct. 738, 764 (2005). In *U.S. v. Barnett*, 398 F.3d 516, 526-30 (6th Cir. 2005), this court determined that a sentence

---

[1] Defendant's other argument, that he changed his plea, is unavailing. Defendant did not change his plea; he never plead guilty.

imposed under the mandatory Guidelines is plain error that requires a remand for re-sentencing. In this case, the district court sentenced Defendant under the mandatory Guidelines regime. Therefore, we remand this case to the district court for re-sentencing.

For the foregoing reasons, we **AFFIRM** Defendant's conviction and **REMAND** to the district court for re-sentencing.