# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――

**No. ACM 38836 (reh)**

―――――――――――

**UNITED STATES**
*Appellee*

**v.**

**Paul D. VOORHEES**
Major (O-4), U.S. Air Force, *Appellant*

―――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 20 July 2018

―――――――――――

*Military Judge:* Mark Rosenow.

*Approved sentence:* Dismissal. Sentence adjudged 5 April 2017 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major Patrick A Clary, USAF; Terri R Zimmerman, Esquire; Jack B. Zimmerman, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Tyler B. Musselman, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

―――――――――――

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

―――――――――――

HARDING, Senior Judge:

In *United States v. Voorhees,* No. ACM 38836, 2016 CCA LEXIS 752 (A.F. Ct. Crim. App. 23 Nov. 2016) (unpub. op.), this court set aside a finding of guilty

for a charge and specification in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and dismissed the charge and specification with prejudice. We also set aside the sentence.[1] We affirmed the remaining findings comprised of five specifications of conduct unbecoming an officer and a gentleman, in violation of Article 133, UCMJ, 10 U.S.C. § 933, and authorized a sentence rehearing on the affirmed findings. At the sentence rehearing, the military judge sentenced Appellant to a dismissal and a reprimand. The convening authority approved only the dismissal.

Appellant raises four issues for our review: (1) whether the military judge failed to grant meaningful relief for violation of Article 13, UCMJ, 10 U.S.C. § 813; (2) whether Appellant is entitled to sentence relief because the rights and privileges lost as a result of his dismissed conviction for sexual assault have not been restored; (3) whether Appellant's waiver of members for resentencing was involuntary because he did not have information about a comment made by the military judge three years prior to Appellant's forum selection; and (4) whether the sentence is inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's convictions for conduct unbecoming an officer and a gentleman are rooted in the sexual comments and actions he directed toward three subordinate female Airmen with whom he deployed or went on temporary duty assignments (TDY) on different occasions. Appellant performed duty as an EC-130 pilot, aircraft commander, and co-pilot during several deployments to Afghanistan. While TDY, deployed, and transiting to and from deployment, Appellant used electronic communications to make a variety of comments with sexual undertones to Senior Airman (SrA) HB, Technical Sergeant (TSgt) BR, and Captain (Capt) MQ. The comments included telling SrA HB he wanted to take her back to his hotel room, asking all three individuals if they cheated on their husband or "significant other," and asking two of them about the undergarments they were wearing.

All five specifications state that Appellant engaged in conduct of a sexual nature with military members junior in rank to him and that the conduct "under the circumstances, was unbecoming an officer and a gentleman." Specification 1 of Charge II states Appellant asked SrA HB "inappropriate questions," to wit: "Have you ever cheated on your husband?"; "Have you ever sent him

---

[1] At the initial trial, officer members adjudged and the convening authority approved a sentence to dismissal, forfeiture of all pay and allowances, and confinement for three years.

pictures?"; and "Can I have pictures of you?" or words to that effect. Specification 2 of Charge II states Appellant massaged SrA HB's back. Specification 1 of the Additional Charge states Appellant made an "inappropriate statement" to SrA HB, to wit: "I would like to take you back to my room" or words to that effect. Specification 3 of the Additional Charge states Appellant sent "unprofessional" texts to Capt MQ, to wit: "What I want to say could end my career and marriage"; "Your [sic] a very beautiful woman and I would love to be close to you"; "What's your definition of cheating?"; and "So if I asked what color panties you were wearing?" or words to that effect. Specification 4 of the Additional Charge states Appellant sent "unprofessional" texts to another enlisted subordinate, TSgt BR, to wit: "This is about to become a game to see what else I can say that will slip by you"; "Mind if I ask u [sic] a couple personal questions?"; "What I want to say could end my career so I just want to make sure you can keep what I say between us because you seem really cool?"; "Oh really, what's under there?"; and "I've had a crush on you," or words to that effect.

## II. DISCUSSION

### A. Illegal Punishment Prior to the Sentence Rehearing

On 29 December 2016, a little over a month after the issuance of our original opinion, The Judge Advocate General remanded Appellant's case to the convening authority for action consistent with our decision. As of that date, Appellant remained confined and had served nearly two years of the original sentence. A continued confinement hearing was held on 18 January 2017 and Appellant was released.[2] Appellant asserts three violations of Article 13, UCMJ, occurred between 29 December 2016 and the date of the sentence rehearing: (1) that he remained illegally confined after 29 December 2016 until his release on 18 January 2017; (2) that his pay and allowances were not fully restored after his release (18 January 2017 to 5 April 2017); and (3) that his duty status improperly remained "prisoner" even after his release. Appellant claims on appeal that the military judge failed to grant meaningful relief for these asserted violations of Article 13, UCMJ, and that we should now do so by setting aside the dismissal. We disagree.

Prior to the sentence rehearing, Appellant filed a motion for confinement credit under Article 13, UCMJ. Appellant requested five-for-one credit for each day he was confined from 29 December 2016 until his release, and two-for-one credit for every day after his release up to the date his new sentence was an-

---

[2] The continued confinement review officer determined that continued confinement was not necessary and Appellant was released. The Government did not oppose Appellant's release.

nounced. The military judge found no evidence of "any intent to punish [Appellant] by keeping him confined, without full pay, or designated in a particular status as [the] case moved toward a sentence rehearing." His finding of non-punitive intent was not clearly erroneous. Moreover, having examined the record, we agree with the military judge there was no punitive intent. The military judge denied Appellant's motion on the grounds raised by Appellant, but provided modest relief on a separate basis. The military judge concluded that the Government had exceeded the deadlines in Rules for Courts-Martial (R.C.M.) 305(h) and (i) and granted Appellant 19 days of confinement credit, one for each day after the 48-hour probable cause determination was missed. As there was no adjudged confinement to apply this credit to, the military judge, consistent with *United States v. Zarbatany*, 70 M.J. 169, 177 (C.A.A.F. 2011), then considered whether the awarded credit should be applied against the adjudged sentence to a dismissal and reprimand to ensure meaningful relief. Taking into consideration the nature of the violation, the harm suffered by Appellant, whether the relief sought was disproportionate to the harm suffered by Appellant, and in light of the offenses of which Appellant was convicted, the military judge concluded that "such relief would be disproportionate within the context of this case."[3]

At the outset, we note that a lack of punitive intent coupled with legitimate government objectives inevitably lead us to deny Appellant's requested relief whether we analyze the claims of unlawful punishment as potential violations of Article 13, UCMJ, as framed by Appellant, or more generally as a basis for sentence appropriateness relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), for unlawful post-trial punishment. As noted, we agree with the military judge that there was no punitive intent and, having conducted our own review, we find that the Government reasonably pursued legitimate interests even if its pursuit was at a pace slower than Appellant would have desired.

Having considered what Appellant has alleged as three distinct Article 13, UCMJ, violations, we conclude we have jurisdiction over one of his claims. We have jurisdiction to determine whether his post-trial confinement from 29 December 2016 until his release on 18 January 2017 resulted in more severe punishment than what Appellant should have experienced. As to Appellant's claims that his pay and allowances were not fully restored after his release and that the update to his duty status was delayed, we find no punitive intent and conclude that we do not have jurisdiction over these collateral matters absent

---

[3] The military judge further ruled that even if he had found an Article 13, UCMJ, violation on the grounds argued by Appellant and provided the requested relief of 259 days of confinement credit, he still would have found a set aside of the dismissal to be disproportionate relief in this case.

such intent. *United States v. Buford,* 77 M.J. 562 (A.F. Ct. Crim App. 2017). Assuming *arguendo* that we have jurisdiction, we decline to exercise our authority to grant relief for administrative issues that are unrelated to the legality or appropriateness of the court-martial sentence in this case.

As to Appellant's claim he is due relief for the time spent in confinement from 29 December 2016 until his release on 18 January 2017, the Government contends Appellant is not entitled to his requested relief for three distinct reasons. First, citing to *United States v. Kreutzer,* 70 M.J. 444 (C.A.A.F. 2012), the Government argues that the protections of Article 13, UCMJ, and R.C.M. 305 did not apply to Appellant as he was not being "held for trial." Second, even if those protections did apply, Appellant failed to meet his burden of demonstrating his right to relief under Article 13, UCMJ, or failed to show that the military judge's determination of lack of punitive intent was clearly erroneous. Finally, the Government agrees with the military judge that the requested relief "would be disproportionate within the context of this case."

Assuming *arguendo* a violation occurred when Appellant remained confined from 29 December 2016 until his release on 18 January 2017, taking into consideration the harm suffered by Appellant, whether the relief sought was disproportionate to the harm suffered by Appellant, and the offenses of which Appellant was convicted, we conclude, as the military judge did, that setting aside the dismissal would be disproportionate.

## B. Illegal Punishment After the Sentence Rehearing

Appellant also asserts he is entitled to relief *from this court* because he has yet to have been restored the rights and privileges lost as a result of his sexual assault conviction, which we dismissed. Specifically, Appellant argues that, because he has not received either monies owed him from the period of time from his release until placement on appellate leave or back-pay and allowances covering the period of confinement he served, this court should intervene and grant sentencing relief by setting aside the sentence of dismissal. Appellant asserts he has been improperly denied his pay and this court has jurisdiction under Article 66(c), UCMJ, to provide a remedy. We disagree.

We note that Appellant does not challenge the legality of the approved sentence. Instead, he takes issue with the decisions of military officials and a delay in the restoration of his pay and implores us to grant sentence appropriateness relief. As this dispute over Appellant's claim to back pay concerns a matter not directly connected to the approved sentence, we must first determine whether we have jurisdiction to grant relief. We hold that we do not.

In *United States v. Dodge,* we determined an appellant's claim for back-pay was not within our statutory jurisdiction. 60 M.J. 873 (A.F. Ct. Crim. App. 2005), *aff'd,* 61 M.J. 288 (C.A.A.F. 2005) (mem.). Notwithstanding our holding

in *Dodge,* Appellant, relying primarily on *United States v. Gay,* 75 M.J. 264 (C.A.A.F. 2016), contends this court has jurisdiction to remedy his lack of pay because Article 66(c), UCMJ, grants broad discretion to determine which part of a sentence "should be approved." In *Buford*, however, we noted that *Gay* did not recognize unlimited authority to grant sentencing relief and held that Article 66(c), UCMJ, does not grant this court jurisdiction over a pay dispute absent a nexus to the approved sentence. *Buford,* 77 M.J. at 562.

Appellant further characterizes his claim as an allegation of illegal post-trial punishment. However, other than captioning this assignment of error as "Illegal Post-Trial Punishment" and asserting that this court has the authority to consider claims of illegal post-trial punishment, Appellant does not specifically claim and, more importantly, does not put forward any evidence of punitive intent. In *Dodge,* we also considered and rejected the appellant's claim that lack of pay amounted to illegal post-trial punishment. We found the appellant fell "far short of demonstrating that a failure to restore the appellant to a pay status was based on an intent to subject him to illegal punishment" and that a bare claim of illegal punishment, absent some evidence of intent to subject an appellant to illegal post-trial punishment, did not establish jurisdiction over collateral pay issues. *Dodge,* 60 M.J. at 878. Appellant has similarly failed to present any evidence to establish that any member of his command or other military official has delayed or denied him back-pay to increase the severity of his sentence and impose illegal post-trial punishment. Following our prior decisions in *Dodge* and *Buford* and in light of Appellant's failure to demonstrate punitive intent, we thus conclude we do not have jurisdiction over Appellant's back-pay disputes.[4]

## C. The Comment

Appellant asserts his waiver of members was not knowing and voluntary because full disclosure of the relevant facts that might reasonably call into question the military judge's impartiality did not occur. Specifically, Appellant claims his waiver of members was involuntary because the military judge failed to inform Appellant of a joking comment the judge made over three years prior to Appellant's forum selection about a favorable outcome for an appellant in another case. In that case a conviction was set aside on appeal. The military judge was a senior trial counsel at the time and made the comment to the military appellate defense counsel who obtained the favorable result for his client.

---

[4] Even if we had jurisdiction to grant sentence appropriateness relief for this claim, we would decline to exercise our authority to do so. Article 75, UCMJ, 10 U.S.C. § 875, applies once a judgment as to the legality of the proceedings is final under Article 71, UCMJ, 10 U.S.C. § 871, and Appellant has other available avenues of relief such as the Court of Federal Claims.

According to that appellate defense counsel, he was asked by the military judge and then-senior trial counsel how it felt "helping a rapist go free?" or words to that effect. The appellate defense counsel understood the comment was intended as a joke even though he personally was not amused. He was also not personally offended or professionally concerned and did not believe that he needed to officially report the matter. Instead, he informally shared the comment with his fellow appellate defense counsel to include Appellant's military appellate defense counsel for his original Article 66, UCMJ, review.

### 1. Voluntary and Knowing Waiver of Members

Whether an accused's forum selection is knowing, voluntary, and intelligent is reviewed de novo. *See United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012). If an accused requests trial by military judge alone, "the military judge should inquire personally of the accused to ensure that the accused's waiver of the right to trial by members is knowing and understanding." R.C.M. 903(c), Discussion. The military judge must determine: (1) whether the accused has consulted with defense counsel, (2) whether the accused has been informed of the identity of the military judge, and (3) whether the accused has been notified of the right to trial by members. *Id* at 428 (quoting R.C.M. 903(c)(2)(A)). These requirements "ensure[,] that an accused understands the nature of the choice before waiving the right to trial by members." *Id*. at 428. In considering the scope of the voluntary and knowing requirement, the CAAF held succinctly: "R.C.M. 903 does not require that a military judge inquire into any non-enumerated factors or collateral matters that may have influenced the accused's election." *Id*. at 430. Appellant now urges that a "non-enumerated factor" and "collateral matter"—a non-disclosed potential basis for judicial disqualification—should be considered in determining whether his waiver of the right to trial by members was voluntary and knowing. Following *St. Blanc,* we limit our waiver analysis to the requirements of R.C.M. 903 and address the recusal issue injected by Appellant separately. We decline Appellant's invitation to conflate the two.

The military judge advised Appellant of his right to trial by members multiple times and granted Appellant's request to defer his election of forum until after motions practice was complete. At Appellant's request, the military judge also provided Appellant an overnight recess to consult with his counsel on his forum choice. During motions practice, Appellant had the opportunity to observe the judge's demeanor and receive the judge's rulings. At an earlier session, the military judge announced his qualifications and disclosed on the record his prior assignment as a senior trial counsel and its overlap with the assignments of both the trial counsel and Appellant's trial defense counsel. The military judge also described steps he had taken upon his detail to Appellant's case to ensure that he had not been involved in any capacity in Appellant's case

when it was originally tried or on appeal. Appellant not only knew the identity of the military judge when Appellant waived his right to members, but also was aware of the judge's prior assignment as a senior trial counsel and had observed the judge in court.

Appellant, after consultation with his counsel, chose to be sentenced by military judge alone, confirmed that at the time he made this selection he knew the military judge's identity, verified that his choice was a voluntary one, and that he knew he was giving up his right to trial by members. The requirements of R.C.M. 903 were satisfied and thus we conclude Appellant's waiver of the right to members was knowing and voluntary.

### 2. Recusal of the Military Judge

Although Appellant did not directly raise the issue of recusal of the military judge, Appellant did reference judicial disqualification in the context of the waiver of the right to trial by members. We find no abuse of discretion by the military judge for failure to recuse himself or for failing to disclose the comment prior to Appellant's waiver of his right to trial by members.

We review a military judge's refusal to recuse himself for an abuse of discretion. *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (citation omitted). The standard for identifying the appearance of bias of a military judge is an objective one: "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (alteration in original) (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)). "There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings." *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). "[R]emarks, comments, or rulings of a judge do not constitute bias or partiality, 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* at 44 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Further, the Supreme Court has made clear that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even having being confirmed as federal judges, sometimes display[]" do not establish bias or partiality. *Liteky*, 510 U.S. at 555–56. Of course, the comment at issue in this case was made when the military judge was a prosecutor.

Given the totality of all the surrounding circumstances attendant to the military judge's comment regarding another appellant's case when the military judge was a senior trial counsel years prior to Appellant's sentence rehearing, the comment is most aptly characterized as a light-hearted attempt at banter

among professional peers and, given its benign intent and remoteness in time, is hardly the stuff recusals are made of. We find no actual or apparent bias on the part of the military judge and no abuse of discretion in the military judge's decision to not recuse himself or disclose the comment.

## D. Sentence Severity

Finally, Appellant asserts that his sentence of dismissal is inappropriately severe. We disagree.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[,] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 142–48 (C.A.A.F. 2010).

Appellant argues that dismissal is "an unduly harsh punishment for the relatively minor conduct" underlying his convictions when considered against "the fact that [he] is a highly decorated combat veteran with an established record of good character." We note, however, that Appellant's misconduct was not a limited one-time lapse of judgment, indiscretion, or aberration. In each instance, Appellant was a superior commissioned officer or senior aircrew member to each of the three subordinates he subjected to inappropriate comments and actions. In each instance, he recognized that he was placing his military career at risk and asked them not to report him. In each instance, he negatively affected his subordinates' morale and attitude toward military service, degraded his squadron's operational effectiveness, and disgraced himself as a military officer. After giving individualized consideration to Appellant, his record of service, the nature and severity of the offenses, and all other matters contained in the record of trial, we do not find Appellant's sentence to be inappropriately severe.

## III. Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court